FREDERICK S. NEWTON ET AL., TRUSTEES, *vs.* FRANK E. HEALY, ATTORNEY GENERAL.

\* Third Judicial District, Bridgeport, October Term, 1923.

WHEELER, C. J., BEACH, CURTIS, KEELER and WOLFE, Js.

It is now well settled that the Superior Court, as a court of equity, has the power to carry out the general intent of the donor of a testamentary charitable trust, when clearly manifested, though the particular form or manner pointed out by the testator cannot be followed because of changed conditions. But this modified doctrine of *cy pres*, or of approximation, arises out of, and is limited by, the necessities of the particular case, and exists only when, and in so far as, the specific method adopted by the testator for carrying his general intent into effect can no longer be executed.

In the present case testamentary trustees, empowered to expend the income of a fund in their hands for maintaining or assisting in maintaining, within a certain district, facilities for higher education of the children, sought authority from the Superior Court to turn over to the town one half of the principal of the fund to assist in erecting a school building and equipping a school for teaching advanced branches of study. *Held* that the case presented did not warrant the application of the doctrine of approximation; that the testator's directions as to the method of expending the income of the fund were not so rigid and precise as to warrant the conclusion that they could no longer be carried out within the wide discretion accorded to the trustees, nor was the present financial inability of the town necessarily a permanent condition; that it was not impossible that the specific intent of the testator respecting the

---

\* Transferred from first judicial district.

application of income might not thereafter be carried out, and that in the meantime the discretionary powers given to the trustees were sufficient to enable them to effectuate the general charitable purpose of the testator; and therefore that the authority requested ought not to be granted.

Argued November 1st—decided November 17th, 1923.

SUIT by testamentary trustees of a charitable trust, holding the fund upon trust to expend the income thereof in maintaining or assisting in maintaining a school above the ordinary grade of common schools in the town of Durham, to determine whether they have authority to pay one half of the principal of the trust fund to the town of Durham toward the cost of equipping a proposed school building with facilities for instruction in the higher branches of public school education, brought to and reserved by the Superior Court in Middlesex County, *Avery, J.*, upon the admitted allegations of the complaint, for the advice of this court. *The Superior Court is advised that the trustees are not authorized to make the proposed expenditure out of principal.*

The trust in question was established by the will of Charles B. Merwin, formerly of the town of Durham and at the time of his death, in 1904, a resident of Bayonne, New Jersey.

The testator gave $20,000 to trustees residing in Bayonne upon trust to pay the income thereof to his widow for life, and at her death to pay the principal to trustees residing in New Haven and in Durham to hold upon the uses and trusts hereafter stated.

The testator's widow died in 1910, and since then the trust has been administered by the Connecticut trustees named in the will and by their successors, under the jurisdiction of the Court of Probate for the district of Middletown.

The trust upon which the fund is now held, so far

as its terms are material to the determination of the questions reserved for our advice, is set forth in paragraph nineteen of the will, and may be summarized as follows: to expend the income thereof in maintaining, or in assisting the town of Durham, the Cochinchang School District in Durham, or whatever school district or society may have charge of the schools north of Mill Bridge in Durham, to maintain a school north of Mill Bridge, which shall provide education for advanced scholars in the higher branches of study and above the ordinary grade of common schools. The testator adds: "My intent is not to diminish the amount applied by the town or any school district for its schools, but to increase the educational facilities for the children; and I direct this trust to be administered by the trustees according to their best judgment for the carrying out of these purposes, but intending to leave the manner of carrying it out to their discretion. . . . I desire to leave with my said trustees the largest liberty in carrying out my intent which may be consistent with the trust. If at any time a corporation or other association shall be formed for the purpose of maintaining an academy or high school, or other school above the ordinary grade, north of said Mill Bridge, in Durham, and said trustees shall deem that it would best effectuate my intent to commit said trusts funds to such corporation or association, I authorize them to do so." And in paragraph twenty-five the testator further provides: "Twenty-fifth. If any question shall hereafter arise as to my intention as to any trusts herein contained, wherein said Henry G. Newton, Frederick S. Newton and William P. Camp are trustees, or as to the proper construction of the will in regard to said trusts, I direct that said trustees or their successors be allowed to exercise their discretion, and that they hold the money and property herein

given to them in trust, and use the same in such manner as they shall believe will carry out my intentions."

The complaint alleges, and the answer admits, that since the fund came into the hands of the Connecticut trustees there has been maintained in Durham north of Mill Bridge a school, approved by the State Board of Education, which has provided education for advanced scholars in the higher branches of study and above the ordinary grade of common schools, and that the trustees have in each year expended the greater part of the income of the trust fund in assisting the town of Durham to maintain this school in accordance with the terms of the trust; that in 1922 the town of Durham was notified by the State Board of Education that it would no longer approve of this school; that the town thereupon purchased a new site in that part of Durham north of Mill Bridge, and a new building is being erected thereon; that the town is not financially able to equip the new building with facilities for providing education in the higher branches of study above the ordinary grade of common schools, and that in the opinion of the trustees the larger purposes of the trust will fail unless such facilities are provided in the new building.

The complaint goes on to allege that to prevent such failure, and in the belief that thereby the purpose and intent of the testator will best be carried out, the trustees are in favor of paying over to the town the sum of $10,000 of the trust fund, upon proper assurance from the town that a department will be maintained in the new building for instruction in the higher branches of study above the ordinary grade of common schools, as provided in the will.

The trustees ask for an adjudication authorizing them to divide the fund and pay over a part thereof to the town of Durham upon the assurance above

stated, and that upon the transfer of $10,000 from the trust fund to the town of Durham they be relieved of all personal liability therefor.

In the view which we take of the case, but one of the several questions reserved for our advice requires an answer. It is as follows: D. "Whether under the facts and circumstances of this case the trustees should be authorized to divide the fund as requested."

*Ward Church*, for the plaintiff trustees.

*James E. Wheeler*, with whom, on the brief, was *J. Frederick Baker*, for the Attorney General.

BEACH, J. We are not able to construe the terms of the trust as authorizing the expenditure by the trustees of any part of the principal of the trust fund for the purpose contemplated; and it is not very confidently contended that such authority can be read into the will by any process of construction merely. The authority given to the trustees as to the remainder of the corpus of the trust after the death of the testator's widow, is "to hold, exchange, invest and reinvest the remainder thereof, changing the investments from time to time as they may think proper; and to expend the income thereof" for the purposes already stated. It is the income only which is to be so expended. The subsequent provision authorizing the trustees "if at any time a corporation or association shall be formed for the purpose of maintaining an academy or high school . . . to commit said trust funds to such corporation or association," is wholly inapplicable to the town, and contemplates the possible establishment of an endowment for maintenance out of income. As to the expenditure of the income the trustees are given a wide discretion, though always limited to the manner

of carrying out the testator's intent. Stating that intent in the broadest possible way, it was to establish a permanent trust fund of which the income should be expended "to increase the educational facilities for the children."

The main contention of the trustees is that the primary purpose of the testator was that the income should be expended in providing, or assisting in providing, higher educational facilities in that part of Durham north of Mill Bridge; and that because of the condemnation of the present school building, and the inability of the town to provide such facilities in the new building now being erected in that part of the town, the larger purposes of the testator will fail, unless the Superior Court applies the *cy pres* doctrine, or the doctrine of approximation, and authorizes the trustees to expend principal instead of income in carrying out the testator's intent.

It is now certain that the Superior Court, as a court of equity, possesses the power to carry out the general intent of the donor of a testamentary charitable trust, when clearly manifested, though the particular form or manner pointed out by the testator cannot, because of changed conditions, be followed. *Woodruff* v. *Marsh*, 63 Conn. 125, 136, 26 Atl. 846; *Hayden* v. *Connecticut Hospital for Insane*, 64 Conn. 320, 324, 30 Atl. 50; *Bridgeport Public Library and Reading Room* v. *Burroughs Home*, 85 Conn. 309, 320, 321, 82 Atl. 582; *First Congregational Soc.* v. *Bridgeport*, 99 Conn. 22, 31, 121 Atl. 77. "To hold this is in no sense to invoke the English sign manual crown prerogative doctrine of *cy pres*. It is only to apply the judicial principle of construction to ascertain and effectuate intention, . . . as this court has done in previous cases." *Hayden* v. *Connecticut Hospital for Insane, supra.*

The modified doctrine of *cy pres*, or of approxima-

tion, which we have adopted, arises out of and is limited by the necessities of the particular case, and it exists only when, and in so far as, the specific method adopted by the testator for carrying his general intent into effect can no longer be executed. In such cases the necessity of preserving and effectuating the general charitable purpose of the testator justifies the substitution of a method which seems to be as nearly approximate as existing conditions will permit. *Keen v. Eastman*, 75 N. H. 191, 72 Atl. 213; *Philadelphia v. Girards Heirs*, 45 Pa. St. 9; *Allen v. Trustees of Nasson Institute*, 107 Me. 120, 77 Atl. 638; 5 Ruling Case Law, p. 365; *In re Weir Hospital*, L. R. (1910) 2 Ch. Div. 124; 14 L. R. A. (N. S.) note, pp. 59–65.

We are of the opinion that the complaint does not make out a case for the application of this doctrine so as to authorize the trustees to make the contemplated expenditure out of principal. The testator's directions as to the method of expending the income of the trust fund are not so specific as to warrant the conclusion that they can no longer be carried out. He first directs that it be expended in maintaining or assisting in maintaining any school north of Mill Bridge which shall provide education for advanced scholars; and then, as if contemplating the possibility that no such school might at all times exist, states his intent in more general language, saying: "My intent is not to diminish the amount applied by the town or any school district for its schools, but to increase the educational facilities for the children; and I direct this trust to be administered by the trustees according to their best judgment for the carrying out of these purposes, but intending to leave the manner of carrying it out to their discretion." Under this provision, and in the absence of any suitable educational facilities north of Mill Bridge in the town of Durham, it seems that the trustees

might, as the complaint itself suggests, continue to expend the income in providing increased educational facilities for the children of the town, by paying for their travel and tuition in the high school of another town. The present financial inability of the town is not necessarily a permanent condition, nor is it certain that the contingency, to which the testator looked forward, of a corporation or association being formed for the purpose of maintaining an academy or high school north of Mill Bridge, may not yet be realized. It is not impossible that the specific intent of the testator as to the application of income may hereafter be carried out, and in the meantime the discretionary powers given to the trustees are sufficient to enable them to carry out the general charitable purpose of the testator.

Question D is answered in the negative, and the Superior Court is advised not to authorize the trustees to make the expenditure contemplated.

In this opinion the other judges concurred.