BANKERS TRUST COMPANY ET AL., TRUSTEES, *vs.* HERBERT SPENCER GREIMS ET ALS.

Third Judicial District, New Haven, June Term, 1928.

WHEELER, C. J., MALTBIE, HINMAN, BANKS and YEOMANS, JS.

Argued June 6th—decided July 27th, 1928.

*Raymond E. Hackett,* for the plaintiffs.

*Ralph Royall,* for the defendants Herbert Spencer Greims and Laura Greims Bartels.

*George M. Skene,* with whom, on the brief, was *David M. Rosen,* for the defendants Gerard and Vera L. Greims, Gerard Greims, Jr., and unborn issue of Gerard and Vera L. Greims.

HINMAN, J. All of the defendants join in the prayer of the complaint that a sale of the property be authorized, and all the briefs and arguments presented are in agreement that such a sale would be for the best interests of all parties concerned and unite in the contention that the first question propounded may and should be answered in the affirmative.

Since 1876 (Public Acts, Chap. 54) a statute, now §6071 of the General Statutes, has empowered the

Superior Court to order the sale of real estate held by any trustee under a will "whenever it will, in the opinion of the said court, best promote the interest of the beneficiaries under such trust, . . . when such sale is not prohibited by said will," and (§6072) has provided for the investment of the proceeds "for the benefit of the parties interested in the trust." However, in addition to the direction to the trustees "to retain unsold" the residence property, and the general requirements of paragraph one of Article Ninth of the will now under consideration, Article Twelfth, while giving to the executors and trustees general power to sell all property "not hereinbefore specifically bequeathed or devised to others than my executors and trustees," and providing that such power of sale "may be exercised during the life of the trusts," excepts therefrom "my said residence and the land and other property connected therewith" which, it is provided, "shall not be sold before the death of my said husband, nor before my said son reaches the age of thirty years, nor before his death, if he survive my said husband but dies before attaining said age." Since a present sale of this property is thus prohibited by the will, power to authorize it must be found to be conferred, if at all, otherwise than by this section of the statute. This the parties concede, but unite in contending that it is afforded under §6070 as now amended by Chapter 264 of the Public Acts of 1921. Section 6070 was originally adopted in 1880 (Public Acts, Chap. 42) and provided as follows: "In all cases where real estate is held by a trustee under a trust created by deed, and by reason of a change of circumstances, or in the condition of such real estate, since the creation of such trust, the execution thereof in exact accordance with the terms of such deed has or shall become impossible, or must necessarily fail to secure the objects manifestly

intended by the grantor in said deed, the Superior Court in the county wherein such real estate is situated may, on the complaint of the trustee or any party beneficially interested in the trust, order the sale of such real estate, or any part thereof, and the investment of the proceeds, either in other real estate or as trust funds generally may be by law invested, for the benefit of the party beneficially interested in such trust, in such manner as said court may deem the most proper to secure the object for which said trust was originally created, as near as may be, according to the intent of the original grantor appearing in the original deed." Thereby the Superior Court, in the exercise of its equitable jurisdiction, was "expressly authorized to apply the *cy pres* doctrine to trusts created by deed." *Woodruff* v. *Marsh,* 63 Conn. 125, 136, 26 Atl. 846. This statute remained unchanged until 1921, when it was so amended as to extend in all respects the application of the powers therein specified to real estate held under trusts created by will as well as by deed. The obvious intent and necessary effect of this amendment was to expressly extend to trusts created by will, whether charitable in object or otherwise, the application of the modified doctrine of *cy pres* or of approximation which the statute had theretofore applied to trusts created by deed, and which our courts, under their general equitable powers, had applied to charitable trusts created by will. *Bristol Baptist Church* v. *Connecticut Baptist Convention,* 98 Conn. 677, 683, 120 Atl. 497; *First Congregational Society* v. *Bridgeport,* 99 Conn. 22, 31, 121 Atl. 77. It gives statutory recognition to the principle that the doctrine of approximation, whereby the general intent of the donor is carried out as nearly as may be, even if the particular method pointed out by him cannot be followed, is " 'not at all confined to the administration of charities,

but is applicable to all devises and contracts wherein the future is provided for.' " *Hayden* v. *Connecticut Hospital for Insane,* 64 Conn. 320, 325, 30 Atl. 50; *Philadelphia* v. *Girard's Heirs,* 45 Pa. St. 9; Perry on Trusts, §§376, 728. When the specific method adopted by the donor for carrying his general intent into effect cannot, because of changed conditions, be executed, there is justified the substitution of a method which is as nearly approximate as existing conditions will permit. *Newton* v. *Healy, Attorney General,* 100 Conn. 5, 10, 11, 122 Atl. 654, and cases cited.

The prerequisite of an order of sale under §6070 as amended is that, by reason of a change of circumstances, or in the condition of the real estate, the execution of the trust in exact accordance with the terms of the deed or will creating it has become impossible, or would fail to secure the objects manifestly intended by the donor. It is manifest that the paramount intention of the testatrix here in making the provisions contained in paragraph one of Article Ninth of her will was to insure to her husband, during his lifetime, and to her son and his family until he attained the age of thirty years if he lived so long, a right of occupancy of the family residence and estate, as a home, without cost, charge or expense to them. A prime essential to the accomplishment of this intention is the desire and willingness on the part of the beneficiaries, or some of them, to utilize the property as such home. The lack of a disposition on the part of any of them to avail of this privilege is unequivocally manifested by their conduct in failing to occupy the premises as such home and by their formal abandonment and renunciation of their rights to do so. The object intended and sought by the testatrix, therefore, cannot be accomplished, and the sole reason for the retention of the residence property by the trustees thereby becomes nonexistent. It

is not conceivably within the intention of the testatrix that, notwithstanding, the property should be retained and maintained, unoccupied, not only without benefit to the intended beneficiaries or to the estate, but involving a continued useless expenditure for care and upkeep and a substantial loss through unavoidable depreciation.

The unwillingness and refusal of the designated beneficiaries to occupy the premises as a home may well be regarded as such a "change of circumstances," not contemplated by the testatrix, by reason of which the execution of the trust in accordance with its terms would signally "fail to secure the objects manifestly intended" by the testatrix, and would give the Superior Court jurisdiction, under §6070 of the General Statutes as amended, to authorize a sale of the real estate in question.

The proceeds of such sale, if made, are to be invested for the benefit of the party beneficially interested in the trust, in such manner as the court may deem the most suitable to secure the object for which the trust was originally created, as nearly as may be, according to the intent of the testatrix appearing in the will. Section 6070 of the General Statutes as amended by Chapter 264 of the Public Acts of 1921. This intent was, first, as we have seen, to provide a home for testatrix's husband, if he so desire, during his life, and for her son, if he so desire, and his family, until he attains the age of thirty years, or until the death of the husband should he live thereafter; second, as appears by paragraph seven of the same (Ninth) article of the will, that, when the son shall attain the age of thirty years, or upon the death of the husband if he live beyond the son's thirtieth birthday, the son shall take absolute title to the residence property. The interest of the husband in this specific property has

been abrogated by his election to take his statutory share and his renunciation of his right to occupy it. The right of the son to utilize it as a home was dependent upon his desire to do so, which has been negatived by his renunciation. The privilege of Mrs. Bartels was dependent upon the occupancy of this property, as a home, by the husband or the son, or both. The trustees, because of the declination of the husband and the son to so occupy it, have elected not to maintain the residence as such home.

If, notwithstanding such declination on the part of the son, any intention on the part of the testatrix to provide him with a home elsewhere were to be discerned and effectuated, such, it seems, will be adequately met by other provisions of the will and by the disposition of the proceeds of the sale as hereinafter indicated. Having attained the age of twenty-one years, the son is entitled, under paragraph four of Article Ninth, to the net income from the New York real estate, which income, if the sale is made, will be freed from the charge, imposed upon it in paragraph one, for the expenses, conduct, and maintenance of the residence property. Under paragraph five he is assured, until he reaches the age of twenty-six, of sufficient income to pay the reasonable expenses of his support, plus $5,000 annually, and from and after twenty-six he will be entitled, under paragraph six, to the net income of the entire residue, freed from the burden of the expense of upkeep of the residence property, which would be deductible were it retained unsold. Under the advice given below, he will also receive, upon attaining the age of twenty-six, the accumulated income from the proceeds of the sale, and thereafter, until thirty, the current income therefrom.

We are of the opinion that the intent and object of

the testatrix will be most suitably secured and effectuated by the proper investment and maintenance of the proceeds of the sale as a separate fund until the son, Gerard Greims, attains the age of thirty years, whereupon such principal should be transferred to him in lieu of the specific real estate as devised to him under paragraph seven. The net income of this fund should be accumulated until he reaches the age of twenty-six years, thereupon such accumulated income should be paid over to him, and thereafter the net income from the fund should be paid over to him, semiannually or oftener, until he attains the age of thirty years, in like manner as the net income of the residuary estate is directed, by paragraphs five and six of the Ninth Article of the will, to be accumulated and paid over to him. If he dies before attaining the age of thirty years, this fund will pass in accordance with the provisions of Article Tenth of the will, as part of the residuary estate "not already paid, transferred or conveyed" to him prior to his death.

Our answer to the first question is yes; to the second, that the proceeds of the sale, if made, should be held, managed, and disposed of as above indicated.

No costs will be taxed in this court to any of the parties.

In this opinion the other judges concurred.